UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Case No.

**MARIO A. GONZALEZ**,

   Plaintiff,

v.

**WELLS FARGO BANK, N.A.**,

   Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Mario A. Gonzalez, by his attorneys, hereby states his Complaint against Defendant, Wells Fargo Bank, N.A., as follows:

I. <u>Parties, Jurisdiction and Venue</u>

1. Plaintiff, Mario A. Gonzalez (hereafter "Mr. Gonzalez" or "Plaintiff"), is a citizen of Colorado whose employment with Defendant, Wells Fargo Bank, N.A (hereafter "Wells Fargo" or "Defendant"), was terminated by Defendant in violation of federal law.

2. Defendant, Wells Fargo, is a banking national association which employed Mr. Gonzalez in its Denver, Colorado branch office.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, arising out of Title VII of the Civil Rights Act of 1964, as amended (hereafter "Title VII")

4. Venue is proper pursuant to 28 U.S.C. 1391, since Defendant is subject to service of process in Colorado, Plaintiff is a Colorado citizen, and the actions complained of herein arose out of his employment in Colorado.

II. General Allegations

5. Mr. Gonzalez commenced his employment with Wells Fargo on December 4, 2007, and his employment was terminated, in violation of Title VII on July 17, 2019, and occurred because of this sex (gender), male.

6. The usual and customary terms and conditions of employment with Wells Fargo, particularly discipline and retention, were not applied to Mr. Gonzalez, who was unlawfully terminated.

7. Mr. Gonzalez is male, was born in 1968, and despite successful employment with Wells Fargo for nearly 12 years which included numerous promotions, awards, merit increases, bonuses, special recognitions, citations, appointments as a mentor and trainer of lower levels of management and excellent performance reviews.

8. The preceding were not sufficient to cement his worth to the Defendant, his employment being summarily terminated without notice, based on the fictional damage alleged by the Defendant.

9. Defendant promptly seized on what it alleged as a capital wrong and that this justified ending his livelihood by an immediate firing with no appeal and no right of rehire. Defendant offered no industrial due process.

10. No recognized training or course of management instruction validates the course of action taken by Defendant. Notably, none of Defendant's policies, procedures or standards commended discharge under the circumstances pled here.

11. Upon information and belief, to the extent the expulsion from service was juried, it was so effected by either senior women or males who had been inducted into what amounted to the gender cleansing intentions effected by executive management.

12. While undisclosed in the EDGAR database, Plaintiff contends that the majority of its depositors are males who, upon learning the Defendant's sentiments about male employees, would adversely impact Defendant's shareholders, of which Plaintiff is one.

13. The non-female animus described herein has not been released to any social media outlet.

14. Upon information and belief, there was no disclosure of the gender-related intentions in the Defendant's Affirmative Action Plan in order to facilitate the Wells Fargo agenda, *viz.* so it could increase its female executive staff positions.

15. Defendant withheld the preceding information from the monitors of Affirmative Action Plans, the Office of Federal Compliance Programs and the Equal Employment Opportunity's Directorate of Affirmative Action Planning.

16. Upon information and belief, the Defendant's records will confirm that both comparatively and relatively, Defendant altered its human capital acquisitions with an orientation toward the hiring of women, despite the qualifications of male applicants or internal male staff seeking various positions within the Company.

17. The preceding impermissible alteration in its hiring practices occurred due to prior allegations of unfair treatment by females.

18. Upon information and belief, no court ordered the Defendant to "tilt" its hiring acquisitions in order to populate its staff with more women, even if those women were lesser qualified than male applicants.

19. The preceding reflects the Defendant's state of mind as it incrementally altered its documented and undocumented hiring protocol leading to re-populating its staff opportunities with women, regardless of a male applicant's credentials.

20. Irregularities occur within every corporation which do not specify that an employee be discharged on the basis utilized for Plaintiff's discharge.

21. Plaintiff had no history of nonconformance asserted as the basis for discharge.

22. Progressive discipline is utilized by Defendant, particularly when there is no risk to the employer with respect to retention of an employee or any basis to suggest a discharge was mandated in that there was no other corrective option.

23. Human Resources professionals train managers that the paradigm for discipline is to use the least harmful disciplinary option in order to effect the desired outcome.

24. Here, the executives involved "lost it", seizing on a ridiculous assertion to effect Plaintiff's expulsion.

25. The assertion made against the Plaintiff had no underlying policy, procedure, protocol, rule, regulation, instruction, directive or order ("policy") requiring the separation of the Plaintiff or any similarly situated individuals.

26. The professional literature and standards addressing personnel management, such as business management treatises, regulatory direction by the bank's regulators, the American Management Association's seminars, training materials, courses or materials marketed by the Society for Human Resource Management.

27. The policies of the Defendant are not copyrighted by any originator or source of the policy relied upon; there is no attribution to their authorship by any recognized authority or employment law scholar. .

28. Mr. Gonzalez was terminated on the basis of an alleged violation of policy that, had he been female, would never have been utilized to justify a termination.

29. It is Defendant's routine, usual and customary practice to simply inform an employee of a compliance expectation with respect to *de minimis* incongruities.

Case 1:20-cv-03696-STV   Document 1   Filed 12/17/20   USDC Colorado   Page 6 of 16

30. Mr. Gonzalez' termination was utilized by Wells Fargo in an effort to impart to its male population that they are subject to scrutiny at the "molecular" level that any senior manager may apprehend.

31. The Defendant sought to enhance its industry image due to it having been publicly accused and penalized for alleged corporate misconduct, with its attendant adverse publicity.

32. Defendant's various self-serving, web-based integrity proclamations amount to "false advertising" with respect to the human resource management practices under review here.

33. The Defendant had been subjected to enforcement action and public derision regarding its discrimination against women in the workplace and its lack of women in executive positions.

34. It is no coincidence that the Plaintiff was replaced by a lesser qualified woman.

35. Mr. Gonzalez's employment was terminated not for his employment activities but because he was male.

36. Upon information and belief the policy adversely impacting him was originated due to the Defendant arbitrarily determining through corporate fixers, public relations specialists and consultants that it needed to add more female executive employees.

37. Such conduct violates the protections afforded to Mr. Gonzalez to be free of discrimination based on sex or gender.

38. Mr. Gonzalez has exhausted his administrative remedies with a charge of discrimination entered by the EEOC on January 27, 2020, a copy of which is attached hereto as Exhibit A, and a "Right to Sue" letter submitted by the EEOC on September 25, 2020, attached hereto as Exhibit B, and this action is timely filed.

## **FIRST CLAIM FOR RELIEF**
(Gender Discrimination Pursuant to Title VII)

39. All previous and subsequent allegations are incorporated herein by reference.

40. Mr. Gonzalez began his employment with Wells Fargo on December 4, 2007 as a Regional Sales Manager.

41. Plaintiff's last position title was Senior Vice President (SVP).

42. At all times, Plaintiff performed his job duties in a satisfactory manner.

43. On or about October 2018, a female SVP for the Southwest region quit her job.

44. Mr. Gonzalez's supervisor (male, National Sales Manager), had a telephone call with Mr. Gonzalez and his peers. The supervisor told the employees that he wanted to replace the SVP with a female. This position was posted, and two female candidates were selected as finalists for the job.

45. However, around late March 2019, Wells Fargo announced a reorganization. Due to this, Mr. Gonzalez's supervisor announced that he was putting the job search on hold until the reorganization was complete.

46. Mr. Gonzalez and others had to re-apply for their jobs.

47. The preceding protocol is condemned by human resource experts as being demoralizing.

48. The Executive Vice President, who is Mr. Gonzalez's supervisor's boss, stated that she was very disappointed in the lack of females in management.

49. She messaged lower level males with her expectations.

50. There was pressure placed on Mr. Gonzalez and his peers to hire females.

51. In 2018, Mr. Gonzalez did hire a female Sales Consultant in order to comply with this directive.

52. On July 17, 2019, Mr. Gonzalez was terminated for a purported policy violation.

53. The stated reason for Mr. Gonzalez' employment termination was a pretext to hide a discriminatory motive.

54. Mr. Gonzalez, at all times, was following the employer's policy in his actions and his activities were within the normal allowances extended to employees such as the Plaintiff.

55. On or around the same date of Mr. Gonzalez' termination, an announcement was made that two female SVPs had been hired; one for the Southwest region and one to replace Mr. Gonzalez in his position.

56. Both of these females had less tenure and experience than Mr. Gonzalez and were also younger than he was.

57. Wells Fargo discriminated against Mr. Gonzalez based upon his sex (male) in violation of Title VII.

58. Prior to the termination of Mr. Gonzalez' employment, the process of the replacement of male employees by female employees commenced in the Denver office.

59. In October of 2018, a lateral counterpart of Mr. Gonzalez, named Tina Zimmerman, a vice president, was going to be replaced after she left the employ of Wells Fargo. In a leadership team call, Mr. Gonzalez' boss, Vladimir Mirkovic, announced that the Defendant would be "hiring a woman – we have too many guys."

60. This position was actually posted for female candidates only.

61. This hiring was put on hold shortly thereafter by the announcement of a company-wide reorganization, which further facilitated the replacement of male employees with female employees.

62. In June of 2019, Mr. Gonzalez was forced to re-interview for his current position due to such reorganization.

63. Shortly thereafter, on July 17, 2019, Plaintiff was told that his employment was terminated, with no prior notice and contrary to the termination policy that was in

effect for a non-male employee. The decision was without warning, unjustifiable and unreviewable by any policy facilitating such a review.

64. The Plaintiff did receive unemployment compensation which, as a matter of law under the Colorado Employment Security Act, can only occur if the separation was "through no fault of the employee."

65. The Colorado Department of Labor and Employment ("CDLE") specifies by regulation that not conveying accurate information to the CDLE constitutes a misdemeanor.

66. Mr. Gonzalez's employment termination occurred without following the progressive discipline policy which had been utilized throughout Mr. Gonzalez's lengthy employment with Wells Fargo, and this disparate treatment was due to Mr. Gonzalez being male.

67. Plaintiff was provided with no personal improvement plan or other typical management procedures that would be and have serially been afforded by Wells Fargo.

68. Wells Fargo was intent on keeping female employees and would never have terminated a female on the basis of the allegation made against Plaintiff.

69. This disparate discipline was discriminatory towards Mr. Gonzalez as a male; had he been female, he would not have been terminated.

70. Following Wells Fargo's termination of Mr. Gonzalez's employment, a less-qualified female candidate with no Wells Fargo management or leadership experience, was appointed to Mr. Gonzalez's position due to being female.

71. Her name is Rachel Schroeder, and she was also younger and less qualified than Mr. Gonzalez.

72. An additional hire was also made, that of Kristen Hillenbrand, a female, to take over a portion of Mr. Gonzalez' job.

73. Due to this "reorganization," the position Mr. Gonzalez was required to re-apply for had just earlier been posted for female applicants only, as an indication of Wells Fargo's intent to use the re-interview existing employee process in order to terminate Mr. Gonzalez and replace him with a female employee.

74. Upon information and belief, Wells Fargo raised so-called violations of Defendant's information security policy.

75. No prior training, certifications or auditing had been offered on the subject issue nor was there notice of consequences for alleged violations.

76. No harm befell the Defendant.

77. No financial impact occurred due to the alleged noncompliance.

78. Mr. Gonzalez had been advised not to send information that included financial matters such as a credit card number which was not encrypted, and he agreed that he would not do so, even though the information in question was strictly related to his own father's business and had nothing to do with the Defendant's business.

79. For purposes of saving such information, Mr. Gonzalez later sent it encrypted to his personal account so that he would not violate the policy and, again, such information was not bank property or bank confidential information.

80. The innocent conduct violated no bank policy but was relied upon as a pretext to fire Mr. Gonzalez and to replace him with a female. The decision was not based on testing or any comparative evaluation utilizing metrics.

81. The actual basis for Plaintiff's removal was that he was male and Wells Fargo had recently been subjected to numerous complaints, including an EEOC enforcement action, for its alleged, unproved discrimination against female employees and lack of female executive staff.

82. A few months after these issues were discussed with Mr. Gonzalez at his meeting with Mr. Mirkovic where he was told on July 17, 2018 that he was terminated.

83. After the fact on July 18, 2018, Mr. Gonzalez was told by Esther Garvey of HR, for the first time, that Mr. Gonzalez sent an email to himself with a "Sweet 16" list of customer prospects, even though this was done strictly for the next day's sales meeting, such information included no financial or other information, and the list of the 16 companies was publicly known and not confidential.

84. Termination on the basis of such an email was wholly outside of Wells Fargo's disciplinary procedures and no female employee would have been terminated on such a basis.

85. The Defendant has an industry reputation for its willingness to engage in wrongful behavior.

86. The Defendant's willingness to present false claims is evidenced by the numerous claims of fraudulent opening of accounts and violations of banking law in

order to falsely claim the success of its operations, and such issues include the following as illustrative:

    a. September 2016 – the fake account scandal. Wells Fargo was fined $185 million from the Consumer Financial Protection Bureau for the creation of fake deposit accounts and fake credit cards;

    b. September 2016 – improperly repossessing service members' cars;

    c. December 2016 – Wells Fargo fails its "living will" test, a requirement that big banks must show how they would unwind in the event of a bankruptcy;

    d. March 2017 – more fake accounts;

    e. March 2017 – flunked community lending test – Wells Fargo did very poorly on an OCC test for community lending;

    f. March 2017 – *Fortune Inc.* magazine article regarding gender discrimination at Wells Fargo;

    g. April 2017 – Whistleblower wins $5.4 million and his job back – former employee was fired after reporting potential fraud to a hotline;

    h. August 2017 – lawsuit over overcharging small business retailers – overcharging for credit card services, early termination fees, and a "deceptive" 63-page fine print agreement that hid terms from small business retailers;

 i.  February 2018 – Federal Reserve restricts size – Fed announced it would restrict the bank's growth;

 j.  February 2018 – Sacramento sues over discrimination against black and Latino borrowers;

 k.  March 2018 – wealth management investigation emerges;

 l.  April 2018 - $1 billion settlement for mortgage locks and auto-loan issues;

 m.  May 2018 – altering business information without client knowledge;

 n.  May 2018 - $480 million to settle securities-fraud lawsuit;

 o.  June 2018 – SEC fine for leading investors astray;

 p.  July 2018 – refunds over add-ons like pet insurance and legal services;

 q.  July 2018 – private bank wealth management issues;

 r.  August 2018 – Wells Fargo pays $2.1 billion for its role in housing bubble;

 s.  August 2018 – hundreds of houses foreclosed on due to computer glitch;

 t.  August 2018 – CNBC investigation about gender bias in wealth management division;

 u.  July 2019 – *Intercept* article about gender discrimination at Wells Fargo;

        v.        August 2020 – Wells Fargo sued for gender discrimination and numerous prior articles have been written regarding gender discrimination at Wells Fargo.

87. Plaintiff, Mario A. Gonzalez, was terminated in violation of Title VII on the basis of his sex (male) and as part of an effort by Wells Fargo, its public reputation in tatters, to try to repair its image as discriminatory against females, and being dishonest with the public, and did so in a manner that constituted unlawful sex discrimination against Mr. Gonzalez, a male.

88. Mr. Gonzalez seeks all remedies and damages as allowed by law, including but not limited to, reinstatement, back pay and front pay, non-economic losses for emotional distress and harm caused by Mr. Gonzalez' termination, for punitive and exemplary damages as allowed, for interest as allowed commencing with the date of his employment termination, and for reasonable attorneys' fees and costs as allowed, together with such other and further relief as is proper.

WHEREFORE, Plaintiff, Mario A. Gonzalez, prays for judgment in his favor as against Defendant, Wells Fargo, N.A., and for compensation as allowed pursuant to applicable statute and law and as plead herein, and including injunctive relief to the extent of reinstatement of employment, for economic and non-economic damages as allowed, for punitive or exemplary damages as allowed, for reasonable attorneys' fees and costs as allowed, for interest from the date of termination of Plaintiff's employment

in the maximum amount allowed as well as interest on such interest from the time awarded until ultimately paid, together with such relief as is fair and just.

<u>Jury Demand</u>: Plaintiff demands trial by jury on all issues herein joined.

Respectfully submitted this 17th day of December, 2020.

<u>          /s/ James L. Abrams                    </u>
James L. Abrams
401 Westwood Drive
Denver, CO 80206
(303) 321-6087
abramsjim@gmail.com

Robert L. Allman, Esq.
Allman, Mitzner & Fawley, LLC
4100 E. Mississippi Ave., Suite 1600
Denver, CO 80246
(303) 293-9393
(303) 293-3130 (fax)
rallman@allman-mitzner.com

Attorneys for Plaintiff, Mario A. Gonzalez